**Albert A. Ciardi, III, Esquire**
**Jennifer C. McEntee, Esquire**
**CIARDI CIARDI & ASTIN**
**One Commerce Square**
**2005 Market Street, Suite 3500**
**Philadelphia, PA  19103**
**aciardi@ciardilaw.com**
**jcranston@ciardilaw.com**
**Telephone: (215) 557-3550**
**Facsimile: (215) 557-3551**
**Attorneys for the Debtor**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | : |
| | : **CHAPTER 11** |
| **MAY ARTS, LLC f/k/a COMPASS** | : |
| **DESIGNS, LLC,** | : **BANKRUPTCY NO. 17-16869** |
| | : |
| **Debtor.** | : |
| | : |

### MOTION OF MAY ARTS, LLC f/k/a COMPASS DESIGNS, LLC FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9013 (I) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

May Arts, LLC f/k/a Compass Designs, LLC (the "Debtor"), by and through undersigned counsel, Ciardi Ciardi & Astin, hereby submits this motion for the entry of an order (I) authorizing the sale of assets, described herein, free and clear of liens, claims and encumbrances and (II) granting related relief (the "Motion"), and in support thereof, respectfully avers as follows:

### JURISDICTION

1.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue

1

is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9013.

## BACKGROUND

2.     On October 9, 2017 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

3.     Since the Filing Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     An official committee of unsecured creditors (the "Committee") has not been appointed in the above-captioned chapter 11 bankruptcy proceeding.

5.     The Debtor was founded in the 1980s in Riverside, Connecticut. The Debtor was founded by Mae Huang who offered crafters and other ribbon lovers high-end decorative ribbon from her home country of Taiwan. The Debtor continues this tradition of offering high-end decorative ribbon to its customers and expanded its selection to offer products made in America as well as products made by other international manufacturers. Joseph Duffey purchased the Debtor on November 1, 2007. The purchase of the Debtor in 2007 was funded with over $3,000,000 of personal and family/friend capital together with traditional lender and seller financing of $6,000,000. In September, 2014 the Debtor refinanced its existing debt with Connecticut Community Bank, N.A. d/b/a The Greenwich Bank & Trust Company (the "Lender").

2

6.      As a family-owned and operated business, the Debtor serves small retailers and wholesale craft makers with access to a differentiated selection of superior quality ribbon, classic design, and exceptional customer service.  The Debtor maintains an active inventory of over 4,000 unique designs to meet the diverse needs of our wholesale customers who desire small volumes of differentiated products allowing them to offer selections not ordinarily available from larger box retail competitors.

7.      The Debtor's product selection includes a wide variety of ribbon, décor, and party products including decorative ribbons for apparel, crafts, and floral design, lace, silks, and a signature adhesive selection.

8.      The Debtor secured an agreement for the sale of substantially all of the assets that are currently owned by the Debtor and used in its business, specifically including, without limitation, the Debtor's goodwill, accounts, various intangibles, inventory, furniture, fixtures, equipment, and all customer lists and intellectual property (the "Assets") to Hillside Central, Inc. or its assignee (the "Buyer") for $417,000 (the "Purchase Price").  Pursuant to the agreement reached with the Buyer, the Purchase Price will be paid via two notes: the first note, in the amount of $367,000, made payable to the Lender (the "CCB Note") and the second note, in the amount of $50,000, made payable to the Debtor (the "Debtor Note"). The proceeds of the Debtor Note will thereafter be used to fund a liquidating plan.

9.      The Buyer is owned by the son of the current and sole shareholder of the Debtor.

10.     The Debtor intends to negotiate and finalize an asset purchase agreement prior to the Sale Hearing requested herein and submit the same for approval.

11.     The Debtor avers that, with the sale of the Assets, as set forth herein, the contemplated sale provides the best-case scenario for a reasonable payment to all creditors.

3

## BIDDING PROCEDURES

12.    The Assets are subject to higher and better offers.

13.    Any party, wishing to submit a higher or better offer on the Assets, may do so at the time of the hearing on the Sale Motion.  If competing bidders attend the Sale Hearing, an Auction will be held under the auspices of the Bankruptcy Court at that time.

14.    As of the date of the filing of this Motion, the Debtor is unaware of other potential bidders for the Assets, and, therefore, will entertain all bids.

## THE BASIS FOR RELIEF AND THE REASONS THEREFOR

15.    By this Motion, the Debtor seeks the entry of two (2) orders by the Court:

   a)  an order scheduling a hearing on the Sale Motion and an Auction for the Assets on the same date, at the same time as the hearing on the Sale Motion (the "Scheduling Order"); and

   b)  an order to be entered at the Sale Hearing pursuant to section 363 of the Bankruptcy Code approving the sale of the Property free and clear of liens, claims, encumbrances and interests (the "Sale Approval Order").

16.    Each of these orders and the reasons and authority for the entry thereof are discussed in detail in the Motion.

## THE SALE APPROVAL ORDER

17.    The Debtor seeks the entry of an order pursuant to section 363 of the Bankruptcy Code, approving any Asset Purchase Agreement and the sale of the Assets in all respects, free and clear of any and all liens, claims, encumbrances and interests in or on the Assets.  The Sale Approval Order reflect the terms of the current agreement but will ultimately reflect the terms of the Asset Purchase Agreement contemplated by the current agreement.

18.    Pursuant to section 541 of the Bankruptcy Code, the property to be sold to the Buyer under the agreement between the Debtor and Hillside Central, Inc. (the "Sale"), are assets of the Debtor's bankruptcy estate.

19.    In accordance with sections 363, 1107 and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to sell property of the estate and maximize recoveries for their creditors.

20.    Section 363(b) of the Bankruptcy Code authorizes a debtor or a trustee to sell its assets outside of the ordinary course of business. See 11 U.S.C. § 363(b)(1).

21.    Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

(f) [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22.    Generally, a debtor must show that each of the following elements have been met before a section 363(b) sale may be approved: (i) that a sound business reason exists for the proposed transaction; (ii) that the sale has been proposed in good faith; (iii) that the sale price is fair and reasonable; and (iv) that accurate and reasonable notice has been provided of the

transaction.  See In re WDH Howell, LLC, 298 B.R. 527, 534 (D. N.J. 2003); In re Stroud Ford,

Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1993).

23.    Although section 363 of the Bankruptcy Code does not specify a standard for

determining when it is appropriate for a court to authorize the use, sale or lease of property of the

estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon

the sound business judgment of the debtor.  In re Dura Automotive, 2007 Bankr. LEXIS 2764 at

*258, (citing Myers v. Martin (In re Martin, 91 F.3d 389, 395 (3d Cir. 1996)); Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983)); In re

Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound

business judgment" test of Lionel Corp. and requiring good faith); In re Del. And Hudson Ry. Co.,

124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business

judgment" test in the Abbotts Dairies decision); In re Montgomery Ward Holding Corp., 242 B.R.

147, 153 (D. Del. 1991) (same).

24.    Courts have made it clear that a debtor's showing of a sound business justification

need not be exhaustive, but rather a debtor or trustee is "simply required to justify the proposed

disposition with sound business reasons." In re Baldwin-United Com., 43 B.R. 888, 906 (Bankr.

S.D. Ohio 1984).

25.    Whether or not there are sufficient business reasons to justify a sale depends upon

the facts and circumstances of each case.  In re Lionel Com., 722 F.2d 1063, 1071 (2d Cir. 1983).

26.    In the circumstances of valid business justifications, applicable principles of law

attach to a debtor's decision a strong presumption "that in making a business decision[,] the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that

the action taken was in the best interests of the company." Official Comm. of Subordinated

Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11), (quotations omitted).

27.    Therefore, the Debtor submits that the decision to sell the Assets is based upon its sound business judgment and should be approved. The Debtor worked diligently to explore alternatives to the proposed sale. However, the current economic climate resulted in the Debtor's determination that the sale of the Assets is a necessary step towards a successful and meaningful distribution to the Debtor's creditors. The Debtor thus believes that the sale of the Assets will provide the best result for its estate and creditors.

28.    Once a court is satisfied that there is a sound business justification for the proposed sale, the court should then determine whether (i) the debtor in possession has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. In re Del. and Hudson Ry. Co., 124 B.R. at 166; accord In re Decora Indus., Inc., Case No. 00-4459, 2002 WL 32332749, at *3 (Bankr. D. Del. May 20, 2002.).

29.    "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." In Re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 142, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy s purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id.

30.    Here, the agreement between the Debtor and the Buyer was negotiated at arm's length.

31.     Moreover, the proposed agreement (and eventual Asset Purchase Agreement) is to be submitted subject to the receipt of higher and better offers. Thus, the Debtor submits that the proposed sale to Buyer constitutes a sale in good faith and for fair value within meaning of Section 363 of the Bankruptcy Code and, specifically, should be afforded the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets. See Id.

32.     Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser.  Section 363(m) provides,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

33.     Section 363(m) of the Bankruptcy Code thus protects the good faith purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  By its terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets.  Additionally, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has indicated that section 363(m) of the Bankruptcy Code also protects the assignee of a debtor's interest in executory contracts under Bankruptcy Code 365. See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 497-98 (3d Cir. 1998).  In Krebs, the Court considered "whether assignments of [certain automobile dealership] franchises under section 365 are also sales of estate property subject to section 363(m)." Id. at 497. Despite the absence of an explicit reference to assignments of executory contracts under section 365 of the Bankruptcy Code, the Court in Krebs concluded

8

that section 363(m) of the Bankruptcy Code protected an assignment of a debtor's interest in certain automobile franchise agreements pursuant to an auction sale. Like the franchise agreements protected in <u>Krebs</u>, the Debtor respectfully submits that section 363(m) applies to protect the Buyer (or other successful bidder) with respect to the Assets and any ancillary assignments thereof.

34.     Although the Bankruptcy Code does not define "good faith," the Third Circuit has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'" <u>In re Abbotts Dairies of Pa., Inc.</u>, 788 F.2d 143, 147 (3d Cir. 1986). Further, the Third Circuit has recognized that the type of misconduct that would destroy a purchaser's good faith status involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.' <u>Id.</u> (remanding case involving insider transaction back to the bankruptcy court for further consideration of good faith where there was evidence that the sale had been orchestrated between insiders and some of the sale conditions were not disclosed to the debtor's creditors) (quoting <u>In re Rock Indus. Machine Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978)). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." <u>See, e.g., In re Stroud Ford, Inc.</u>, 163 B.R. 730, 732-33 (Bankr. M.D. Pa. 1993); <u>In re Pisces Leasing Corp.</u>, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting <u>In re Rock Indus. Machine Corp.</u>, 572 F.2d at 1198).

35.     As will be further demonstrated at the Sale Hearing, the sale of the Assets was proposed in good faith as a result of arms'-length negotiations between the Debtor and the Buyer. In addition, the sale of the Assets to the Buyer is subject to higher or better offers pursuant an auction process designed not only to solicit potential competing bidders, but to ensure that no party

9

is able to exert undue influence over the process. Under such circumstances, the Debtor submits that the Buyer (or successful bidder, if not the Buyer) should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

36.    The Debtor believes that the prompt sale of the Assets, as proposed, is in the best interests of the creditors and the estate. The Debtor believes that the Purchase Price is fair and reasonable under the circumstances.

37.    In the interest of attracting the best offers, the Sale of the Assets should be free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with holders of any such liens, claims and encumbrances being paid from the proceeds of the Sale of the Assets and/or being given replacement liens, claims, and encumbrances attaching to the proceeds of the Sale of the Assets.

38.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b)    such entity consents;

(c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)    such interest is in bona fide dispute; or

(e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

39.    The Debtor requests that the Court authorize the Sale of the Assets free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Liens and Claims"). The

Sale of the Assets pursuant the auction process will satisfy section 363(f) of the Bankruptcy Code

because any entities holding liens and claims will have received notice of this Motion and the Sale

Notice.  All parties in interest will be given sufficient opportunity to object to the relief requested

herein and any such entity that does not object to the Sale of the Assets should be deemed to have

consented.  See <u>Futuresource LLC v. Reuters Ltd.</u>, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true

that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a

bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of

objection (provided of course there is notice) counts as consent.  It could not be otherwise;

transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's

assets had to execute a formal consent before they could be sold.") (internal citations omitted);

<u>Hargrave v. Twp. of Pemberton</u> (In re Tabone, Inc., 175 B.r. 855, 858 (Bankr. D.N.J. 1994) (failure

to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).  As

such, to the extent that no party holding a lien or claim objects to the relief requested in the Sale

Order, the Sale of the Assets free and clear of all liens and  claims satisfies section 363(f)(2) of the

Bankruptcy Code.  To the extent a party holding a lien or claim objects to the relief requested in

the Sale Order, the Sale of the Assets free and clear of such liens and claims satisfies one or more

of sections 363(f)(1) or (3)-(5), as applicable.

40.     Accordingly, the Debtor requests that the Assets be transferred to the Buyer (or

other successful bidder, if not the Buyer) free and clear of all liens, claims, encumbrances, and

interests with the same to attach to the net sale proceeds of the Assets.

**THE SALE COMPLIES WITH FEDERAL RULE OF
BANKRUPTCY PROCEDURE 6004(f)(1).**

41.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary

course of business may be by private sale or by public auction.

42.    The Debtor believes a sale of the Assets pursuant to a public auction will maximize the sale proceeds received by the estate, which is the paramount goal in any proposed sale of property of the estate.  In re Dura Automotive Sys., Inc., Case No. 06-11202(KJC), 2007 Bankr. LEXIS 2764, *253 (Bankr. D. Del. Aug. 15, 2007) ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.").

## APPROVAL OF THE AGREEMENT IS WARRANTED

43.    The applicable principle of law with respect to the approval of asset sales in bankruptcy is stated in the case of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).  The Court in Lionel held that approval of a sale is appropriate if the court finds the transaction represents a reasonable business judgment on the part of the debtor.  See also, Stephens Industries v. McClung, 789 F.2d 3863  (6th Cir. 1986); In re Coastal Industries. Inc,, 63 B.R. 361 (Bankr.  N.D. Ohio 1986), In re Baldwin United Corp., 43 B.R. 888 (Bankr.  S.D. Ohio 1984).

44.    In light of the foregoing, the Debtor has determined that the Sale to Buyer on the terms and conditions set forth herein (and eventual Asset Purchase Agreement) are appropriate and in the best interest of its estate and all parties in interest.

45.    The Sale will enable the Debtor to provide a distribution to secured and unsecured creditors that likely would not be available absent the Sale.

## WAIVER UNDER RULE 6004(h)

46.    The Debtor has set forth herein and will demonstrate at the hearing on the Motion, the potential harm of any delay.

47.    The Debtor requests a waiver of the stay as provided under Rule 6004(b) to allow for a closing within the fourteen (14) day period referenced in Rule 6004(h).

**WHEREFORE,** the Debtor respectfully request that this Court (i) enter an Order scheduling the Sale Hearing on the same date and at the same time as a potential Auction, (ii) enter an Order approving the sale of the Assets free and clear of liens, claims, encumbrances and interest, and (iii) grant such other and further relief as this Court deems just.

**CIARDI CIARDI & ASTIN**

Dated: August 24, 2018                    By: /s/ *Albert A. Ciardi, III*
                                          Albert A. Ciardi, III, Esquire
                                          Jennifer C. McEntee, Esquire
                                          One Commerce Square
                                          2005 Market Street, Suite 3500
                                          Philadelphia, PA 19103

                                          *Attorneys for the Debtor and*
                                          *Debtor-In-Possession*